Filed 1/23/23 P. v. Lopez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE , Plaintiff and Respondent, v. HECTOR MANUEL LOPEZ, Defendant and Appellant. | F083885 (Super. Ct. No. SUF19495) **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County. Steven K. Slocum, Judge.

Carla J. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri, Christina H. Simpson and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Detjen, J. and DeSantos, J.

In 1996, defendant Hector Manuel Lopez was convicted of second degree murder, three counts of premeditated attempted murder, and three counts of assault with a firearm. He was sentenced to a term of 15 years to life for the second degree murder conviction and three consecutive terms of life with the possibility of parole for the three attempted murder convictions. In 2019, defendant petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his convictions for second degree murder and attempted premeditated murder. The superior court summarily denied the petition, holding that section 1172.6 was unconstitutional. In 2021, we reversed and remanded. On remand, the trial court denied defendant's petition at the prima facie stage, after appointing counsel.

On appeal, defendant argues the trial court erred in denying the petition at the prima facie stage because the record does not conclusively establish that he was precluded from relief. Specifically, he argues that the record confirms he was not the actual killer and it is possible from the record that the jury found him guilty of second degree murder by imputing to him the malice of the actual killer. The People agree that the trial court erred in denying his petition at the prima facie stage. We reverse.

## PROCEDURAL HISTORY[2]

On May 2, 1995, the Merced County District Attorney filed an information charging defendant with first degree murder of Juan Viera (§ 187, subd. (a); count 1), three counts of attempted premeditated murder (§§ 187, subd. (a), 664; counts 2, 4, & 6), and three counts of assault with a firearm (§ 245, subd. (a)(2); counts 3, 5, & 7). As to

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 recently was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We will refer to the current section 1172.6 in this opinion.

[2] We summarize only the procedural history relevant to our review of the order denying defendant's section 1172.6 petition.

each count, the information further alleged that defendant personally used a firearm (§ 12022.5, subd. (a)). As to counts 2, 4, and 6, the information alleged that defendant was armed with a firearm (§ 12022, subd. (a)(1)).

On May 6, 1996, a jury found defendant not guilty of first degree murder, but guilty of second degree murder on count 1. The jury further found defendant guilty as charged on counts 2 through 7. The jury found the premeditation allegations true as to counts 2, 4, and 6, but found the firearm allegations not true as to all counts.

On July 18, 1996, the trial court sentenced defendant as follows: on count 1, 15 years to life; on counts 2, 4, and 6, consecutive terms of life with the possibility of parole; and on counts 3, 5 and 7, four years (the upper term), stayed pursuant to section 654.

On November 1, 2019, defendant filed a section 1172.6 petition seeking resentencing and requesting appointment of counsel. On December 24, 2019, the trial court denied the petition, holding that section 1172.6 was unconstitutional. On June 23, 2021, we reversed.

On January 28, 2022, after appointing counsel, but without issuing an order to show cause or holding an evidentiary hearing, the trial court denied defendant's petition.

On February 3, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY[3]

"Gunfire erupted on the evening of September 20, 1993, in Merced. In its aftermath, Juan Viera was found dead with a lethal .38-caliber bullet wound to his back and superficial .22 bullet wounds in his buttocks; [Javier] Tovar, [Anthony] Beyelia and [Manuel] Chacon sustained injuries from bullets consistent with a .22-caliber firearm.

"The victims were members and associates of the M Street Mob. On the night of the attack, they had congregated at a bus stop at M Street and

---

[3] We provided a factual summary in our prior opinion on defendant's direct appeal. (*People v. Lopez* (Feb. 19, 1998, F026470) [nonpub.].) We repeat that summary here.

3.

Childs Avenue. The night before, a fight had broken out between the M Street Mob members and a rival gang known as the Surenos. An agreement was made to fight at a local elementary school. When the Surenos did not arrive, the M Street Mob members went to the area where they congregate.

"Appellant was seen in the area where the Surenos members congregate, together with William Nunez and another person wearing Surenos gang colors. The unidentified Surenos gang member pulled a knife on Tovar, who responded by pulling a bar from his car. The Surenos member said '13' as he ran away. Surenos members identify themselves with the number 13. The altercation ended when someone yelled out 'cops' and everyone ran. A Merced Police Gang Violence Suppression Unit officer testified that he believed the shooting on September 20, 1993, was 'payback' for the events of the night before.

"On the evening of the shooting, a truck with a black rack drove slowly down M Street. Three persons were observed in the cab of the truck. A fourth person was in the bed of the truck. Tovar recognized the person in the bed of the truck as appellant. The passenger in the cab of the truck pulled out a semi-automatic gun and began shooting. Between 10 to 20 shots were fired. Some shots were louder than others, which made Tovar believe two guns were involved in the attack. Eight .22-caliber shell casings from a semi-automatic weapon were found at the scene. All of the casings had been fired from the same firearm.

"Chacon initially told the police he was 'pretty sure' the person in the back of the truck was shooting. At trial, Chacon testified that the only shooter was the person on the passenger side of the cab. Upon being shown a transcript of his earlier statement, Chacon said he did recall his earlier statement and his memory then was better than at trial.

"After the shootings, Tovar identified appellant from his Merced high school year book. Tovar was shown some photo lineups and identified Keith Nunez as the passenger, Joe Nunez as the driver, and Alberto Mora as the person in the middle of the cab.

"Two months after the shooting, a light colored truck with utility racks was located in Stockton. It was registered to the father of Keith, Willie and Rogelio Nunez. Two .22-caliber casings were found in the cab of the truck, one of which matched the eight casings found at the scene of the crime. A tube of facial creme [*sic*] bearing the name Joe Nunez was found in the glove box.

4.

"Appellant was identified by Tovar as having been seen with other Surenos members on approximately ten occasions. Appellant was identified by Fernando Moreno, a member of the Sureno gang, as having visited the Sureno gang hangout at Jose Cardoza's home on two to four occasions.

"Appellant was arrested almost two years after the shooting. Appellant at first denied being a member of the Sureno gang, but then admitted membership. Appellant was interviewed by the police after his arrest; he admitted that on the night of the shooting, he was alone in the back of the truck. Appellant at first denied having a gun, but then admitted that he had a .38-caliber gun and he fired all five bullets the gun contained.

"Appellant admitted knowing the victims were Norteno members of the M Street Mob who wanted to attack Keith 'Wolfie' Nunez. Appellant related that Wolfie had come to his home, shown him a gun and said, ' "Let's go fuck these guys up." ' Alberto Mora also showed him that he had a gun. Appellant at first admitted, then denied, that he showed Wolfie and Mora his gun while they were still at his house. Later, appellant said Mora gave him the bullets to his gun. Appellant admitted that he saw Wolfie shoot the .22; he had a .38-caliber gun and he thought Mora shot his gun, although he did not actually see Mora fire it. Appellant told the police he left for Mexico three days after the shooting because he was scared.

"Appellant testified in his defense that he left Merced twelve days before the shooting incident; he went to Mexico to help his mother with a shrimp business. Appellant said that he became sick and entered the hospital on September 14 or 15 to have gall bladder surgery. He was still in the hospital on the day of the shooting and recuperated for the next six or seven months. Appellant denied being in Merced on the day of the shooting, he denied owning a gun, and he denied shooting Juan Viera. Appellant testified that he confessed to his involvement only because one of the police officers had displayed a firearm and he thought they were going to force him to confess.

"Appellant's family members and girlfriend testified on his behalf. Appellant's sister testified that she had taken her brother to the bus station to return to Mexico on September 7 or 8. Appellant's girlfriend testified that appellant called her the first week of September and told her he would be leaving for Mexico that day. Appellant's brother testified that appellant left for Mexico on September 8, 1993. Another sister testified that appellant arrived in Mexico on September 11 or 12, 1993, and had to have emergency gall bladder surgery two or three days later. Appellant's mother

5.

testified that appellant was admitted to the hospital on September 15, 1993, and was discharged on September 20, 1993.

"In rebuttal, the wife of the manager of the apartments near where appellant lived in September of 1993, testified that she saw appellant the Friday before September 20, 1993."

## DISCUSSION

**I. Applicable Law**

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) "to amend the felony murder rule and the natural and probable consequences doctrine … to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see § 189, subd. (e); accord, *People v. Strong* (2022) 13 Cal.5th 698, 707–708.)

Senate Bill 1437 accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842–843.) Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of

6.

[s]ection 190.2."[4]  (§ 189, subd. (e); accord, *Gentile*, *supra*, 10 Cal.5th at p. 842.)

Senate Bill 1437 also added section 1172.6 (former § 1170.95) to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, *supra*, 10 Cal.5th at p. 843.)  This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter …." (§ 1172.6, subd. (a).)

"Section [1172.6] lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.)  First, an offender must file a petition in the sentencing court averring that:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]
>
> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]
>
> "(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3); see also § 1172.6, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959–960 (*Lewis*).)

---

**4**  Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1172.6, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition. (§ 1172.6, subd. (b)(2).) Otherwise, the court must conclude that the defendant has filed a facially sufficient petition and counsel must be appointed, if requested. (§ 1172.6, subd. (b)(3); *Lewis*, *supra*, 11 Cal.5th at p. 966 ["a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes [a] prima facie determination" in consideration of the record of conviction].)

After counsel is appointed to represent a defendant who filed a facially sufficient petition, the trial court determines whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 961–963, 966–967; see *People v. Strong*, *supra*, 13 Cal.5th at p. 708.) In making the prima facie determination, the court may rely on " 'the record [of conviction], including [its] own documents, "contain[ing] facts refuting the allegations made in the petition," ' " prior appellate opinions in the matter, jury instructions, and verdict forms. (*Lewis*, at pp. 970–971, 972.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at pp. 971–972.) If, in light of the record of conviction, defendant's petition fails as a matter of law, the trial court may summarily deny it. (*Id*. at p. 974.)

If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause[5] and hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c), (d)(1).) At this evidentiary hearing,

---

[5] "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

"the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder … under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

## II. Prima Facie Case

Defendant contends the trial court erred by denying his petition rather than issuing an order to show cause because he made a prima facie showing that he was not the actual shooter and the jury could have found him guilty based on a theory of felony murder or natural and probable consequences murder. The People agree, as do we, that defendant was not ineligible for relief as a matter of law, therefore, the trial court's order must be reversed.

At defendant's trial, the jury was instructed on directly aiding and abetting murder, uncharged conspiracy murder, natural and probable consequences murder, and second degree felony murder based on assault with a firearm.[6] The parties agree that based on defendant's conviction for second degree murder in combination with the jury's not true findings on the firearm allegations, defendant could have been convicted of murder under the natural and probable consequences doctrine.[7] The People concede that

---

[6] As we concluded in our opinion on defendant's direct appeal, the felony-murder instruction suggesting to the jury that it could find defendant guilty of murder based on a theory of felony murder with assault with a firearm as the predicate felony was error. (See *People v. Hansen* (1994) 9 Cal.4th 300, 311–312; *People v. Ireland* (1969) 70 Cal.2d 522.)

[7] Defendant suggests that our opinion on defendant's direct appeal indicates that defendant "was convicted under a felony murder theory." That is not correct. We concluded that the jury could reasonably have interpreted the instructions to permit a finding of guilt on an erroneous theory of second degree felony murder based on a predicate offense of assault with a firearm. However, in finding that a felony-murder theory based on assault with a firearm was not lawful, we then concluded that "the jury's verdict of second degree murder necessarily stemmed from criminal liability based upon a theory of conspiracy or aiding and abetting. These derivative liability theories are the only theories of liability consistent with the finding by the jury that appellant did not personally use a firearm."

defendant's petition met the low bar for prima facie relief and that the trial court could not have determined from the record whether defendant had been convicted on a theory of murder that is still valid today without making findings of fact that it was not permitted to make at the prima facie stage. We accept the People's concession, reverse, and order the trial court to issue an order to show cause.[8]

## DISPOSITION

The order is reversed and the trial court is directed to issue an order to show cause.

---

[8] In defendant's supplemental opening brief, he argues that aiding and abetting implied malice murder is not a valid theory of liability for second degree murder. Because we reverse, we need not resolve that issue. The trial court may resolve that issue in the first instance. We note that other courts have addressed this issue. (See *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 591 [rejecting the "contention that direct aiding and abetting implied malice murder is not a valid theory of liability for second degree murder"].)